UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DR. DAMIAN MEDICI,<br><br>*Plaintiff*,<br><br>v.<br><br>LIFESPAN CORPORATION,<br>RHODE ISLAND HOSPITAL, and MICHAEL SUSIENKA,<br><br>*Defendants.* | C.A. NO. 17-cv-00265-M-PAS |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO MODIFY SUBPOENA DUCES TECUM TO BROWN UNIVERSITY**

The plaintiff, Dr. Damian Medici, hereby opposes the defendants' Motion to Modify Subpoena Duces Tecum to Brown University.

**A.   DEFENDANT SUSIENKA'S STUDENT/PERSONNEL IS MATERIAL AND NOT PROTECTED FROM DISCLOSURE UNDER FERPA.**

The defendants first assert that the request for defendant Susienka's "student/personnel file" (Subpoena Request, No. 11) should be barred as it is protected from disclosure under the Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g.

While FERPA "affords privacy protection against parties accessing an individual's educational records, absent that individual's consent, [it] contains an exception to this requirement when the records are obtained pursuant to a judicial order or subpoena 'upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution of agency.'" *United States v. Pleau*, 2012 WL 4369302 (D.R.I. 2012), quoting 20 U.S.C. § 1232g(b)(2)(B).

Here, the defendants fail to mention that FERPA provides an explicit exception to its general rule of nondisclosure when the records are sought pursuant to a subpoena and the student is notified. See 20 U.S.C. § 1232g(b)(2)(B). The student, defendant Susienka, has obviously been notified as he is a party to this action and is represented by counsel. He was a graduate student at Brown and is an adult. Given that the documents are sought pursuant to a subpoena and he has been notified, FERPA is not an obstacle to disclosure.

The defendants fail to provide any legal support for their blanket assertion that "Brown is barred from permitting the release of Susienka's education records." Motion, p. 2. Tellingly, Brown has not sought to quash or limit the subpoena.

In addition, defendant Susienka's student/personnel file is relevant to the issues in the action and is within the broad scope of discoverable material under Rule 26. As an initial matter, the plaintiff is not interested in any financial aid information or health documents that may be in Susienka's file and agrees to restrict the request to exclude such items. He is interested in Susienka's academic performance at Brown, documents concerning his involvement in the research misconduct proceedings, documents relating to his requests to change labs, and any favorable treatment of him due to his having brought the allegations. Susienka had been in Dr. Deborah (Mikki) Ciombor's lab, then moved to Dr. Medici's lab, and then to Dr. Jeffrey Morgan's lab (after he made the allegations against plaintiff Dr. Medici).

Susienka's student/personal file is relevant and discoverable as it goes to Susienka's motive to make up false allegations against Dr. Medici. As the plaintiff alleges, Susienka struggled as a graduate student in Dr. Ciombor's lab and then Dr. Medici's lab and, "[r]ather than work had to obtain good results, he attempted to use Dr. Medici as a scapegoat for his own incompetence and failures in the lab … [and] wanted to leave Dr. Medici's lab and was looking for a way to convince

his program director to allow him to move to a third lab and start over from scratch to continue to pursue a doctorate degree. *Amended Complaint, ¶ 41.* After Susienka made the allegations against Dr. Medici on March 31, 2014, Susienka was removed from his lab over a week later and then transferred to Dr. Morgan's lab soon thereafter.[1] While Susienka ostensibly had to start all over in working on his doctorate, he obtained his doctorate degree in a remarkedly short time, suggesting that Brown, at the behest of Lifespan/Rhode Island Hospital, provided Susienka favorable treatment. During his deposition, Susienka testified that, when he started the biomedical engineering Ph.D. program in the fall of 2011, he expected that it would take 5-6 years. *Susienka Deposition, pp. 14-15.* However, he again had to start over when he entered Dr. Morgan's lab in April or May of 2014 but, remarkably, he defended his thesis in December 2015 and graduated in May 2016. *Id. at 16-17.* That Susienka defended his thesis only a year and a half after he entered Dr. Morgan's lab suggests he was fast-tracked in his doctorate and that such fast-tracking was a reward for his bringing the allegations against Dr. Medici. This information goes to Susienka's motive in bringing the allegations and in Lifespan's motive in placating Susienka by treating him favorably after the fact.

B. **THE DEFENDANTS' MOTION FAILS TO DEMONSTRATE THAT THE BALANCE OF THE SUBPOENA IS TOO BROAD.**

The defendants also make a general assertion that "[m]any of the documents sought by the Subpoena fall outside the permitted scope of discovery" and seek an order modifying the Subpoena "to communications that relate to the research misconduct investigation or the research matters

---

[1] The defendants' assertion in their Motion that "[u]pon bringing the allegations forward to [Lifespan], Susienka was immediately removed from Medici's lab" is simply not true. Susienka was allowed to stay in Medici's lab for over a week during which he, along with two other lab assistants, engaged in an experimental setup of Dr. Medici, claiming that they withheld treatment of particular cells but told Dr. Medici that the cells had been treated, and then accusing Dr. Medici of additional misconduct.

3

discussed therein." In doing so, it appears that it only seeks modifications of Requests 4 through 8 and Request 13.

    **1.**    **Brown Emails:  Requests 4 through 8.**

Ironically, Dr. Snyder of Lifespan, in responding to the allegations of research misconduct against Dr. Medici, contacted Brown and had Brown search all of Dr. Medici's emails and, later, the emails of Dr. Reginato to or referring to Dr. Medici. Now the defendants object to Dr. Medici obtaining copies of Brown emails, despite their having had free access to the same emails.

**Request No. 4**. This request seeks copies of emails between Susienka's Brown email account, since January 1, 2014, and Dr. Medici, Dr. Snyder, Dr. Saab, Dr. Kurtis, Diana Ramirez, Melissa Ramirez, and/or Dr. Ciombor. Such emails are relevant to the issues in the case and are discoverable. The only connection between Susienka and Dr. Snyder, Dr. Saab, and Dr. Kurtis was the research misconduct proceeding. Dr. Snyder was the Research Integrity Officer for Lifespan; Dr. Saab was the Chairman of the Inquiry Committee; and Dr. Kurtis was the Chairman of the Investigation Committee. Susienka never had any contact with any of them prior to his making his allegations. Any communications between him and Snyder, Saab, and/or Kurtis are relevant, as each either explicitly related to the misconduct proceeding or pertained to Susienka's requests to move out of Dr. Medici's lab, or possible favorable treatment of Susienka as a result of his bringing the allegations. As for Susienka's communications with Diana Ramirez and/or Melissa Ramirez, communications between them, even if not explicitly relating to the research misconduct proceeding, is relevant. They were all in Dr. Medici's lab and they all claimed that they were having trouble with the process of EndMT in the months leading up to Susienka's March 31, 2014 allegations, and that they all had suspicions that the process was invalid. Their communications during the requested time period are all relevant as such communications will directly relate to the

research being conducted in Dr. Medici's lab during a crucial period, as well as their relationships with each other, and their communications concerning Dr. Medici.

As for Dr. Ciombor, communications with her are very relevant. Susienka worked in Dr. Ciombor's lab immediately before working in Dr. Medici's lab. Dr. Ciombor was forced to move out of her lab space to make room for Dr. Medici. Dr. Medici stated early on that he thought that Dr. Ciombor was behind the allegations against him. Dr. Snyder, as the defendants well know, sent Dr. Ciombor an email early on telling her that he had received information that she was disclosing information about the investigation. The communications between them are extremely relevant as they would show any involvement by Dr. Ciombor in the allegations, any breach of confidentially by Susienka, and Susienka's desire to move out of Dr. Medici's lab.

**Request No. 5**. This seeks copies of emails between Dr. Snyder's Brown email account, since January 1, 2014, and Dr. Medici, Dr. Saab, Dr. Kurtis, Michael Susienka, Diana Ramirez, Melissa Ramirez, and/or Dr. Ciombor. All such communications are relevant to this action. Dr. Snyder's only relationship with Dr. Medici, Michael Susienka, Diana Ramirez, and Melissa Ramirez was this research misconduct proceeding. Any communications he had with them must relate to the proceeding, even if not explicitly. For instance, there is information that Dr. Snyder wrote a letter of recommendation for Melissa Ramirez, even though she never performed any work for him. Communications regarding favors Snyder provided after the fact are relevant to motive. As for Snyder's communications with Dr. Saab and Dr. Kurtis, Dr. Snyder selected them to serve as chairmen on the two committees he launched as part of the research misconduct proceeding against Dr. Medici. Dr. Snyder has testified that neither were his friends. Dr. Snyder was required to select fair and impartial members to these committees. Communications between them are

relevant, even if not directly pertaining to the research misconduct proceeding, as they will show the relationship between them and whether Dr. Snyder complied with his obligations.

As for Dr. Ciombor, communications with her are very relevant for the same reasons as stated above. Dr. Snyder sent Ciombor an email early on stating that he had information that she was discussing the research misconduct proceeding. Dr. Snyder's only connection with Dr. Ciombor was this research misconduct proceeding. All communications between them during the requested period are relevant.

**Requests 6 and 7.** They seek similar emails, but this time emails involving Diana Ramirez's and Melissa Ramirez's Brown email accounts. Diana Ramirez's and Melissa Ramirez's relationships with the other individuals was either solely limited to the research misconduct proceeding or that they worked together in Dr. Medici's lab. Communications they had with these individuals during the requested time are relevant as they either relate to research in Dr. Medici's lab during a crucial time, concern the research misconduct proceeding either directly or indirectly. Also, any post-proceeding communications involving recommendations are relevant to motive.

**Request No. 8.** This is a similar request but seeks emails from or to Dr. Ciombor's Brown email account for the period January 1, 2013 to the present. As mentioned above, Susienka worked in Dr. Ciombor's lab before working for Dr. Medici. Also, sometime in 2013, Dr. Ciombor had to move out of her lab space so that Dr. Medici could move in. Upon information and belief, Dr. Ciombor was not happy with this and complained. Dr. Medici, when the allegations were made against him, first thought that Dr. Ciombor was behind the allegations. Her communications with Susienka respecting Dr. Medici are relevant to Susienka's motive. As Dr. Ciombor had not other relationship with anyone else listed, except the research misconduct proceedings, any

communications she had with the other individuals during the requested time period are relevant and should be produced.

### 2. **Susienka's Notebook.**

Request No. 13 seeks a copy of Susienka's notebook from Dr. Morgan's lab. As discussed above, Susienka went from Dr. Ciombor's lab, to Dr. Medici's lab, to Dr. Morgan's lab. As he worked on something new in Dr. Morgan's lab, he had to start his doctorate work all over in around May 2014. Despite this, he defended his thesis in December 2015, just a year-a-half later, which was a mere fraction of the 5 to 6 years he anticipated in obtaining his doctorate. Dr. Medici's alleges that Susienka, being in the second lab he was unsuccessful in, decided to make the allegations against Dr. Medic so that he could then transfer out without harming his progress in obtaining his doctorate. To the extent that Susienka used his having brought allegations against Dr. Medici to his advantage in having his doctorate fast-tracked, that is relevant to both his motive and Lifespan's efforts to reward him. The notebook will show whether he actually did the work to earn the doctorate.

Lastly, there is a Protective Order (Document 62) in place such that the defendants may designate any documents produced as "Confidential," such that any concern about improper dissemination is minimized.

WHEREFORE, the plaintiff respectfully requests that the Motion be denied. In the alternative, the plaintiff asks that the Court modify (as the plaintiff agrees to comply with regardless) that the Subpoena be modified as follows:

- Request No. 11 (Susienka's student/personnel file) is modified to exclude financial aid information and health documents; and

- Request No. 5 (Dr. Snyder's emails) is modified to exclude any confidential emails with counsel limited to counsel, Dr. Snyder, Deciding Official Murphy, and members of the Inquiry and Investigation Committees.

Respectfully submitted,
The Plaintiff,

**DR. DAMIAN MEDICI,**
By his attorney,

*/s/ William T. Harrington*
William T. Harrington (BBO# 564445)
171 Milk Street, 2nd Floor
Boston, MA 02109
(617) 426-7400
wharringtonlaw@gmail.com

Dated:  May 16, 2018

### CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants via first class mail, postage prepaid, on this date.

*/s/ William T. Harrington*
