UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DR. DAMIAN MEDICI,

    *Plaintiff,*

v.

LIFESPAN CORPORATION,
RHODE ISLAND HOSPITAL, and MICHAEL
SUSIENKA,

    *Defendants.*

C.A. NO. 17-cv-00265-M-PAS

## PLAINTIFF'S OPPOSITION TO MOTION FOR ISSUANCE OF LETTERS ROGATORY

The plaintiff, Dr. Damian Medici ("Dr. Medici"), hereby opposes the defendants' Motion for Issuance of Letters Rogatory (the "Motion"), stating as follows:

1. The defendants have been well aware, since the beginning of the case, that Dr. Logan Walsh not only had information relevant to this case but that he was a likely witness at trial.

2. His relevance is obvious as he was the principal author of the so-called *Walsh Manuscript*, which was the subject of two of the four allegations that were the subject of Lifespan's research misconduct proceeding against the plaintiff. Incredibly, despite this, Lifespan never even contacted Dr. Walsh during its year-and-a-half investigation of the plaintiff.

3. Since the beginning of the case, the defendants also have been aware that the plaintiff would likely call Dr. Walsh as a witness. On February 26, 2016, nine days after this lawsuit was filed in the District of Massachusetts, undersigned counsel wrote a letter to the Office of Research Misconduct (ORI), the federal agency charged with oversight of misconduct in federally-funded research and which Lifespan had previously notified of its findings. The letter

gave notice to ORI of the filing of the lawsuit and enclosed a copy of the complaint. The letter also enclosed a copy of a written statement by Dr. Walsh, explaining:

> In addition, I am enclosing a copy of a letter of support from Dr. Logan Walsh, the lead author of the unpublished manuscript that Lifespan falsely claimed to find misconduct against. Dr. Walsh was never interviewed during the proceeding. In his letter, Dr. Walsh confirmed that there was never any misconduct, that this was nothing more than minor clerical error, and that the source data shows that the results and conclusions of the research are 100% accurate.

A copy of undersigned counsel's letter to ORI is attached at Exhibit 1. A copy of Dr. Walsh's letter, that was enclosed with the letter to ORI, is attached at Exhibit 2.

4. Importantly, the letter to ORI and the Walsh enclosure were copied to Attorney Wertheimer, counsel for the defendants, such that the defendants have been well aware for over two years that Dr. Walsh would likely be a witness.

5. Later, on July 20, 2017, the plaintiff also disclosed Dr. Walsh in his Initial Disclosures as someone likely to have discoverable information. As the defendants did not issue an interrogatory seeking the identities of witnesses or people with relevant information, the plaintiff had no need to again disclose Dr. Walsh as a potential witness.

6. On May 3, the plaintiff produced an affidavit of Dr. Walsh which is consistent with his letter. Attached at Exhibit 3 is a copy of his affidavit. No where does this affidavit indicate that Dr. Walsh has possession of the original data files as Attorney Shaw's affidavit suggests in paragraph 29. Moreover, the plaintiff has produced the files that he says should have been included, as the defendants are well aware.

7. Despite knowing that Dr. Walsh would likely be called as a witness by the plaintiff since the beginning of the lawsuit, the defendants never took any steps to depose Dr. Walsh during the discovery period, which ended May 14.

8. It was only after the plaintiff disclosed an expert report, on May 14, that the defendants apparently decided that they wanted to depose Dr. Walsh. On May 14, the plaintiff disclosed the 35-page expert report of Dr. Alan R. Price, the former Acting Director of the Division of Investigative Oversight of ORI. Dr. Price concludes his detailed report by describing Lifespan's research misconduct proceeding in this case as "the worst administratively-handled, most unfair research misconduct case that I have ever reviewed in my 29 years evaluation such investigations …"

9. The defendants should not be allowed to re-open discovery to depose someone, based on their receipt of an expert report, who they have been well aware would be a witness since the very beginning of the case. The deposition of Dr. Walsh will not only be inconvenient to Dr. Walsh, but will cause additional costs to the plaintiff, who is unemployed and is desirous that this case can finally be adjudicated.

10. As there is simply no compelling reason why the defendants should be allowed to reopen discovery to depose someone whom they have been well aware, since the beginning of the case, would be a witness.

WHEREFORE, the plaintiff respectfully requests that this Court deny the defendants' Motion for Issuance of Letters Rogatory.

>Respectfully submitted,
>The Plaintiff,
>
>**DR. DAMIAN MEDICI,**
>By his attorney,
>
>*/s/ William T. Harrington*
>William T. Harrington (BBO# 564445)
>738 Main Street
>Hingham, MA 02043
>(781) 385-7230
>wharringtonlaw@gmail.com

Dated: May 25, 2018

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants via first class mail, postage prepaid, on this date.

>*/s/ William T. Harrington*