UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

---

DR. DAMIAN MEDICI,

*Plaintiff*

v.                                                                  Civil Action No. 1:17-cv-00265-M-PAS

LIFESPAN CORPORATION,
RHODE ISLAND HOSPITAL, and
MICHAEL SUSIENKA,

*Defendants.*

---

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE CERTAIN
EXHIBITS AND CERTAIN ASSERTED UNDISPUTED FACTS**

      Defendants Lifespan Corporation, Rhode Island Hospital and Michael Susienka

("Defendants") submit this memorandum in opposition to Plaintiff's Motion to Strike Certain

Exhibits and Certain Asserted Undisputed Facts [Dkt. No. 84].

      By his motion, Plaintiff seeks to strike certain exhibits, currently under seal, relating to

Harvard Medical School's ("Harvard") investigation into allegations of research misconduct by

Plaintiff when he was affiliated with and/or employed by Harvard (the "Harvard Documents"),

and certain assertions of fact contained in Defendants' Statement of Undisputed Material Facts

("SUMF") that relate to those documents and that investigation (the "Harvard Facts"). [Dkt. No.

84.] Plaintiff asserts that the Court should strike the Harvard Documents and Facts on the

grounds that they are irrelevant, confidential and constitute hearsay. In fact, the Harvard

Documents and Facts are relevant to numerous claims and issues raised by Plaintiff's Second

Amended Complaint [Dkt. No. 58] (the "Complaint"), are not confidential under any applicable

law (and can be sealed to the extent they are deemed confidential and not already sealed) and do

not constitute hearsay.

## BACKGROUND

Plaintiff began his graduate career at Harvard in 2002, earned his Ph.D. from Harvard in 2008, and worked in various labs at Harvard through 2012, when he joined RIH.  As discussed in detail in Defendants' Motion for Summary Judgment [Dkt. No. 74], in March 2014, Defendant Susienka brought forward allegations regarding image duplication in certain of Plaintiff's published articles and unpublished manuscripts to Lifespan's Research Integrity Officer ("RIO"). The articles identified by Susienka were all published while Plaintiff was affiliated with Harvard; the manuscript was submitted for publication while Plaintiff was affiliated with RIH.

Lifespan reviewed Susienka's allegations and determined that Lifespan should investigate whether the allegations constituted research misconduct.  However, following discussions among Lifespan, Harvard and the Office of Research Integrity, the allegations relating to the articles published while Plaintiff was affiliated with Harvard were referred to Harvard for review.  Lifespan proceeded to investigate the remaining allegations.  Lifespan's investigation resulted in a finding of research misconduct with respect to three of four allegations.  As part of its investigation, Lifespan considered the allegations that had been referred to Harvard for purposes of evaluating the credibility of Plaintiff's "clerical error" defense, although Lifespan made no findings with respect to those allegations.  For its part, Harvard has completed its inquiry with respect to the allegations referred by Lifespan, finding that the images at issue in each allegation were duplicates and that an investigation was warranted into whether those instances of image duplication constituted research misconduct. That investigation is on-going.

Plaintiff's Complaint asserts a series of claims arising out of Lifespan's inquiry and investigation of the allegations initially brought forward by Susienka.  Plaintiff alleges that

Lifespan did not have "jurisdiction" to review any of the allegations because the research

underlying the articles and the manuscript was performed while he was at Harvard. *See, e.g.,*

Compl. ¶¶ 47, 68.  He also alleges that the allegations of image duplication brought forward by

Susienka were defamatory and that Lifespan's RIO violated its Research Misconduct Policy by

crediting those allegations.  Compl. ¶¶ 45, 51, 52.  Plaintiff alleges that, to the extent the images

at issue were duplicates, the duplication was the result of clerical error.  Compl. ¶ 154.

During discovery, Defendants requested that Plaintiff produce documents in his

possession relating to Harvard's investigation.  Plaintiff refused to produce those documents on

the basis of relevance and confidentiality, leading to an October 24, 2017 telephonic conference

with the Court.  At the conference, the Court ordered Plaintiff to produce the Harvard

documents, but agreed that the parties could seek entry of a protective order.  The parties filed a

joint motion for entry of a Protective Order [Dkt. No. 61] and the Court entered the Protective

Order on October 30, 2017.

Plaintiff produced documents relating to the Harvard investigation on November 10,

2017.  Plaintiff designated all of the documents as "confidential" pursuant to the protective order.

Discovery continued thereafter.  During his deposition, the Plaintiff answered numerous

questions regarding the Harvard inquiry.  Plaintiff's counsel did not designate any of the

deposition transcript as confidential.

## ARGUMENT

## I.   THE HARVARD DOCUMENTS ARE SQUARELY RELEVANT TO PLAINTIFF'S CLAIMS AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

This is a case about Plaintiff's alleged research misconduct — misconduct that spanned

Plaintiff's career at Harvard and RIH.  Plaintiff would like this case to be *only* about whether

Defendants Lifespan and RIH's investigation into that misconduct conformed to Lifespan's

3

Research Misconduct Policy and the federal research misconduct regulations, without any reference to the merits of the matters investigated.  But that is not the case that Plaintiff brought.  Because this case necessarily addresses whether Plaintiff engaged in research misconduct and whether the allegations asserting as much were made and investigated in good faith, the Harvard Documents — which address half of those allegations — are squarely relevant.  The following is a non-exhaustive list of reasons why the documents are relevant.

First, Plaintiff's Complaint includes a claim for defamation, which asserts, among other things, that allegations of image duplication brought forward by Defendant Susienka in March 2014 were defamatory, and that statements made during the course of the review of those allegations were similarly defamatory.  Of course, a claim for defamation necessarily fails if the allegedly defamatory statements were true or if the statements are subject to a qualified privilege and were made without malice.  *See Burke v. Gregg*, 55 A.3d 212, 218 (R.I. 2012)("To prevail in a defamation action, a plaintiff must prove: '(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) damages, unless the statement is actionable irrespective of special harm."); *Avilla v. Newport Grand Jai Alai LLC*, 935 A.2d 91, 96 (R.I. 2007) (plaintiff must show express malice to overcome qualified privilege).  The allegations brought forward by Susienka and reviewed by Lifespan's Inquiry Committee included allegations that were subsequently referred to Harvard for review.  Therefore, Harvard's review of those allegations, and its determination that the images identified by Susienka were duplicates and that an investigation into whether such duplication constitutes research misconduct was merited, are directly relevant to whether Susienka's allegations were true and/or asserted with the malice necessary to overcome applicable qualified privilege.

4

Second, Plaintiff claims — and claimed throughout Lifespan's inquiry and investigation — that he did not engage in research misconduct, and that any image duplications that occurred were the result of clerical error.  Plaintiff has offered the same explanation in the course of Harvard's inquiry and investigation into numerous instances of image duplication by Plaintiff. Lifespan found that Plaintiff's explanation of clerical error was not credible.  Harvard has questioned the credibility of Plaintiff's explanation, although its investigation continues.  The evidence collected by and conclusions reached by Harvard regarding the credibility of Plaintiff's explanation are thus directly relevant to whether that same explanation — offered to Lifespan — could or should have been believed.

Third, Defendants' Motion for Summary Judgment argues that Plaintiff's claim for breach of the Lifespan Research Misconduct Policy fails because, among other reasons, Plaintiff cannot establish that that the outcome of Defendants' inquiry and investigation would have been any different had those alleged breaches not occurred (assuming, solely for purposes of Defendants' Motion, that they occurred at all).  The fact that Harvard's inquiry committee found that an investigation was warranted with respect to many of the very same allegations that were reviewed by Lifespan's inquiry committee is directly relevant to this argument.

For all of these reasons, among others, the Harvard documents are directly relevant to Plaintiff's claims and whether they can withstand Defendants' Motion for Summary Judgment.

## II.   THE HARVARD DOCUMENTS ARE NOT CONFIDENTIAL UNDER THE RESEARCH MISCONDUCT REGULATIONS.

Plaintiff asserts that the Harvard Documents and Facts are confidential under 42 C.F.R. Part 93, the federal regulations that govern institutional research misconduct investigations and therefore should be struck.  Part 93 contains a single provision regarding confidentiality, 42

C.F.R. § 93.108.  Contrary to Plaintiff's assertion, this regulation does not render the documents

at issue confidential.

Section 93.108 states, in its entirety:

(a)     Disclosure of the *identity of respondents and complainants* in
        research misconduct proceedings is limited, to the extent possible,
        to those who need to know, consistent with a thorough, competent,
        objective and fair research misconduct proceeding, and as allowed
        by law. Provided, however, that:

        (1) The institution must disclose the identity of respondents and
        complainants to ORI pursuant to an ORI review of research
        misconduct proceedings under § 93.403.

        (2) Under § 93.517(g), HHS administrative hearings must be open
        to the public.

(b)     Except as may otherwise be prescribed by applicable law,
        confidentiality must be maintained for any records or evidence
        from which *research subjects* might be identified. Disclosure is
        limited to those who have a need to know to carry out a research
        misconduct proceeding.

(Emphasis added.)

Thus, by its terms, the regulation only applies to the *identity* of the respondent and

complainant, and only then "to the extent possible."  Here, it was Plaintiff who made the identity

of the respondent and the complainant publically known through the filing of the Complaint.

Once that information was made public by the Plaintiff, the regulation no longer applies.[1]

Plaintiff could argue that his Complaint only disclosed his identity as the subject of the

Lifespan research misconduct investigation, not the Harvard investigation.  But such an

argument would be disingenuous at best.  First, Plaintiff's Complaint asserts in numerous places

that the allegations brought forward by Susienka involved work performed at Harvard, thereby

---

[1] Plaintiff was apparently unconcerned about the confidentiality requirements of Section 93.108 when he filed the
Complaint, which identified Susienka as the complainant.

suggesting that any allegation of research misconduct should have been investigated by Harvard, as opposed to Lifespan.  Of course, this is precisely what occurred with respect to several of the allegations initially received by Lifespan.  Second, Plaintiff himself has filed documents, including in Opposition to Defendants' Motion for Summary Judgment, that identify him as a subject of an investigation by Harvard.  Plaintiff's Statement of Additional Material Facts ("SAMF") [Dkt. No. 83], ¶ 318 and Exs. 83 and 100.

Furthermore, the mere fact that information may be confidential has no bearing on the admissibility of such information.  In the event the Court determines that the Harvard documents are entitled to protection, there is a simple solution — the Harvard Documents and Facts can be sealed (as has already occurred in the case of the Harvard Documents).  There is no basis, given the direct relevance of the Harvard Documents and Facts, for striking them.

## III.    THE HARVARD DOCUMENTS ARE NOT HEARSAY.

Lastly, Plaintiff argues that the Court should strike the Harvard Documents and Facts as hearsay because Defendants are using the documents to argue that Harvard "credited the allegations to some degree."  While true, this does not render the Harvard Documents and Facts hearsay.  Hearsay is an out-of-court statement offered for the proof of the matter asserted.  Fed. R. Evid. 801(c).  Defendants are relying on the Harvard Documents as evidence that allegations brought forward by Susienka were referred to Harvard, that Harvard conducted an inquiry into those allegations and made certain findings.  *See, e.g.*, SUMF ¶ 151 ("On September 18, 2014, Lifespan officially referred allegations involving duplicate and/or manipulated images . . . to Harvard"); ¶ 155 (stating that Plaintiff claimed that the duplicate images reviewed by Harvard were the result of clerical error); ¶ 158 (stating that the Harvard Inquiry Report found that evidence was sufficient to warrant an investigation into Plaintiff's alleged image duplication).  Plaintiff is not relying on the documents for the "truth of the matter asserted," only that the

events in question occurred, i.e. that the allegations were in fact referred, that Harvard conducted

an inquiry and made certain findings as part of that inquiry.  Indeed, with respect to some of the

statements Plaintiff objects to as hearsay, Defendants believe the truth to be the opposite of what

the statements assert (for example Plaintiff's statement to Harvard that the image duplications at

issue were the result of clerical error).  As for the whether the images investigated by Harvard

were in fact duplicates, Defendants are relying on the testimony of their expert, Mike Rossner,

Ph.D., and not the Harvard Documents or the Harvard Facts.

Finally, documents arising from employment-based investigations do not constitute

hearsay where they are offered to establish the mindset of the employer that acted upon the

outcome of the investigation.  *See, e.g., Roja-Ramirez v. BMJ Foods, Inc.*, No. 09-1593, 2011

WL 693621, at *4 (D.P.R. Feb. 24, 2011) (holding that documents generated during employment

investigation were not hearsay because they were "not offered to prove any particular version of

the alleged incidents, but to demonstrate the steps [the employer] took and what information it

received during its investigation").  The same holds true with regard to Lifespan in the context of

a research misconduct investigation.

In sum, the Harvard Documents and Facts are not hearsay, and Plaintiff's Motion to

Strike should be denied in its entirety.

Dated:    November 2, 2018

/s/ Rachel M. Wertheimer
Rachel M. Wertheimer, BBO # 625039
VERRILL DANA LLP
One Portland Square
P.O.  Box 586
Portland, Maine 04112-0586
(207) 774-4000
rwertheimer@verrilldana.com

and

Paul W. Shaw, BBO # 455500
VERRILL DANA, LLP
One Boston Place, Suite 1600
Boston, MA 02108
(617) 309-2600
pshaw@verrilldana.com

DEFENDANTS LIFESPAN
CORPORATION, RHODE ISLAND
HOSPITAL and MICHAEL SUSIENKA

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2018, I electronically filed this document with the Clerk of Court using the CM/ECF System, which I understand will send notification of the filing to all counsel of record.

/s/ Rachel M. Wertheimer
Rachel M. Wertheimer

12239234_1