UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DAMIAN MEDICI,<br><br>    *Plaintiff,*<br><br>v.<br><br>LIFESPAN CORPORATION,<br>RHODE ISLAND HOSPITAL, and<br>MICHAEL SUSIENKA,<br><br>    *Defendants.* | C.A. NO. 17-cv-00265-M-PAS |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Plaintiff Damian Medici ("Medici") opposes the Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (the "Motion"), which is premised on Medici conceding that there is insufficient evidence on his claim under the Stored Communications Act, 18 U.S.C. § 2701 *et seq.* Opposition (ECF No. 79), at p. 42.

**OVERVIEW OF PERTINENT ALLEGATIONS IN COMPLAINT**

Even aside from the claim under the Stored Communications Act, 18 U.S.C. § 2701 et seq., Medici's Complaint amply provides a basis for federal question jurisdiction.[1]

In his Complaint, Medici details the various requirements under federal law for research misconduct proceedings. Second Amended Complaint ("Complaint"), ECF No. 58, ¶¶ 18-29. The Complaint describes how, under federal law, any institution receiving federal research funds must comply with HHS's regulations on research misconduct, entitled the "Public Health

---

[1] Medici's original Complaint (ECF No. 1), and First Amended Complaint (ECF No. 51), and the Second Amended Complaint (ECF No. 58) are virtually identical, aside from preliminary allegations concerning personal jurisdiction and changes made in light of the voluntary dismissal of Dr. Peter Snyder and Dr. John Murphy as defendants, Because of this, references to the "Complaint" are to the Second Amended Complaint.

Services Policies on Research Misconduct" and set forth in 42 CFR Part 93. Id. at ¶ 19. The Complaint then sets forth various specific requirements under the federal regulations that institutions such as Lifespan/RIH must comply with, including issuing their own research misconduct policy that complies with the federal regulations. Id. at ¶¶ 19-29. It further alleges that the purpose of Lifespan's research misconduct policy was to comply with federal regulatory requirements. Id., at ¶¶ 30-32.

The Complaint further alleges that the Defendants violated "both the Regulations and the Policy in numerous ways in conducting the research misconduct proceedings against Dr. Medici." Id. at ¶ 40. It then goes on to detail the numerous specific breaches of both the Regulations and the Policy. Id. at ¶¶ 41-167. In doing so, the Complaint cites to specific sections of the Regulations numerous times. See Id. at ¶¶ 46, 51, 63, 66, 67, 76, 79, 81, 83, 85, 86, 87, 109, 117, 118, 120, 130, 133, and 136.

Count I of the Complaint sets forth a claim for breach of contract and breach of the implied covenant of good faith and fair dealing. Id. at ¶¶ 168-172. It asserts that Medici entered into an agreement with Lifespan/RIH and that such agreement "incorporates, or otherwise includes, the terms of the Policy and the Regulations." Id. at ¶ 169. It further asserts that due to Medici being retained as a research scientist and, "as the Agreement provided that [Medici] could be terminated for cause if found to have engaged in 'professional misconduct,' the Agreement contemplated that any investigation into possible research misconduct would be governed by both the Policy and the Regulations and, in effect, incorporated the terms of the Regulations and the Policy." Id. The Complaint further asserts that not only did Lifespan/RIH agree to comply with the Policy when it hired Medici as a research scientist, the Agreement provided that "its terms are to be modified to comply with any regulations such that, to the extent

the Policy does not provide what is mandated by the Regulations, the Policy is reformed to so comply with the Regulations." Id. Count I further asserts that the implied covenant of good faith and fair dealing required Lifespan/RIH "to conduct any research misconduct investigation in good faith, fairly, and in full compliance with the Policy and the Regulations." Id. at ¶ 170.

## ARGUMENT

**I.  Federal Question Jurisdiction Exists as the Case Involves Disputed and Substantial Federal Issues.**

Ironically, the Defendants are now asserting that the case does not involve substantial issues of federal law. When Medici first filed his Complaint, the Defendants sought dismissal of the action on subject matter jurisdiction grounds, arguing that the case should be dismissed as, under the federal regulatory scheme, Medici first needed to exhaust his right to administrative review by the federal Department of Health and Human Services ("HHS") before he could file suit. See Defendants' Memorandum in Support of Motion to Dismiss (ECF No. 12), pp. 18-24. In doing so, the Defendants relied on *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 175 (1st Cir. 2016). Id. at p. 18. As the Defendants argued, "Medici's claims are based on allegations that defendants failed to comply with HHS regulations governing research misconduct investigations and with the RM Policy, which was issued pursuant thereto." Id. The Defendants went on to argue that the court "lacks subject matter jurisdiction over claims for which Congress has allocated initial review of an administrative body" and that "[a] review of the language, structure, purpose, legislative history and opportunity for meaningful review of the research misconduct regulations establishes that Congress intended that HHS and [federal Office of Research Integrity] conduct the initial review of an institution's finding of research misconduct." Id. at p. 19.

While the U.S. District Court for the District of Massachusetts (Burroughs, J.) did not dismiss the matter, it did, based on this argument, stay the matter for months, finally lifting the stay after HHS/ORI indicated that it took "no position regarding this private litigation." ECF No. 35-2. The Court's Memorandum of Decision (ECF No. 37), published at *Medici v. Lifespan Corp.*, 239 F.Supp.3d 355 (D.Mass. 2017), held that, based on the *Anversa* decision, the case "should be stayed pending the outcome of the administrative review." 239 F.Supp.3d at 365. In reaching its holding, the Court relied upon the federal statutory and regulatory scheme, which it discussed in great detail. Id. at 363-366.

The *Anversa* case involved very similar allegations and claims. In it, two medical school professors brought suit against Harvard Medical School and related entities asserting claims of breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference, and violations of Massachusetts's unfair trade practices and privacy laws. *Anversa*, 835 F.3d at 173. The breach of contract claims were "based on a claim that the ORI regulations are incorporated into their employment contracts with those institutions." Id. On the plaintiffs' appeal from the dismissal of the matter, the First Circuit held that the case should be stayed pending administrative review, not dismissed.

The *Anversa* court addressed the federal jurisdiction issue on its own and, in doing so, held that federal question jurisdiction existed even though the case only involved state law claims between non-diverse parties. The *Anversa* court addressed the issue as follows:

> The parties have not contested the existence of Article III jurisdiction, and the district court did not consider that question. Nevertheless, we have an obligation to assure ourselves of our own jurisdiction. See *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Colombani*, 712 F.3d 6, 10 (1st Cir. 2013). In keeping with that obligation, <u>we note that Article III jurisdiction exists</u> in this case notwithstanding that the controversy is between non-diverse parties and asserts exclusively state-law claims. Federal question jurisdiction under 28 U.S.C. § 1331 encompasses a narrow swath of cases in which "a state-law

4

> claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005). <u>Given that all of the plaintiffs' claims turn on the interpretation of the federal regulations governing research misconduct investigations and the importance of those regulations to the Congressional scheme, this case plainly falls within the narrow swath of cases described in *Grable*.</u>

*Anversa*, 835 F.3d at 174, n. 5 (Emphasis added). Later, the *Anversa* court observed that the district court's eventual disposition would benefit from "any legal interpretations … made by ORI in the course of its review," and noted that the plaintiffs' claims "turn on the answers to embedded federal questions concerning the meaning and application of the very federal regulations that ORI exists to enforce." Id. at 178 & n. 6.

Like in *Anversa*, this case involves a breach of contract claim that asserts that the requirements of the federal regulations are incorporated into the contract. Like in *Anversa*, given that Medici's claims "turn on the interpretation of the federal regulations governing research misconduct investigations …, this case plainly falls within the narrow swath of cases described in *Grable*." *Anversa*, 835 F.3d at 174 n. 5.

In seeking to distinguish *Anversa*, the Defendants misconstrue it, asserting that the issue in *Anversa* was a legal issue which required the court to consider the overall statutory structure. See Memorandum in Support of Motion to Dismiss (ECF No. 90), at p. 7. In doing so, the Defendants ignore the fact that the Court in this case, in ruling on the Defendants' Motion to Dismiss at the beginning of the case, analyzed the federal statutory and regulatory scheme and based its decision on it. See *Medici v. Lifespan Corp.*, 239 F.Supp.3d at 363-366. Morevoer, in making this argument, the Defendants ignore the fact that the *Anversa* court clearly based its holding that there was federal question jurisdiction on the fact that the plaintiffs' claims "turn on

the interpretation of the federal regulations" and "on the answers to embedded federal questions concerning the meaning and application of the very federal regulations that ORI exists to enforce." *Anversa*, 835 F.3d at 174 n. 5, 178 n. 6. Like the plaintiffs in *Anversa*, Medici is asserting that the requirements of the federal regulations were incorporated into his contract and, like in *Anversa*, the resolution of his claims will requires the interpretation of the federal regulations. Here, as discussed above, the Complaint contains detailed allegations as to the various instances the Defendants violated the mandates of the federal regulations and the policy that was mandated by the federal regulations.

Other First Circuit cases also provide support for federal jurisdiction. See *One & Ken Valley Hous. Grp. V. Maine State Hous. Auth.*, 716 F.3d 218, 224 (1st Cir. 2013) (holding that breach of contract dispute sufficiently arose under federal law because it involved a federal contractor's implementation of a federal program and the plaintiff claimed that the defendant breached the contract by following a guideline promulgated by a federal agency pursuant to a federal statute); *Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't of Envt. Mgmt.*, 585 F.3d 42, 52 (1st Cir 2009) (lobstermen could challenge in federal court a Rhode Island lobster trap allocation statute that made exercise of state agency authority dependent on federal law, requiring interpretation of federal law).

**II.     Even if the Court Concludes that, Aside from the Stored Communications Act Claim, there is No Jurisdiction, the Court Should Exercise its Discretion and Exercise Supplemental Jurisdiction Over the State Law Claims.**

The Defendants ignore the fact that, even if their argument is correct, dismissal would not be mandated and the Court would be free to exercise supplemental jurisdiction over the state law claims. This is because the Court clearly had original subject matter jurisdiction when Medici filed his Complaint, as he asserted a federal claim under the Stored Communications Act.

It is well settled that, when a federal court dismisses the only federal claim, it may still exercise "supplemental jurisdiction" over the remaining state law claims. *Miller v. Town of Wenham Massachusetts*, 833 F.3d 46, 56 (1st Cir. 2016). Subsection (c) of the supplemental jurisdiction statute, 28 U.S.C. § 1367, provides that the district court "may decline to exercise supplemental jurisdiction over a claim …. if … (3) the district court has dismissed all claims over which it has original jurisdiction." When a court dismisses the only federal claim, it must "reassess its jurisdiction." *Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998). "Whether a court should decline supplemental jurisdiction depends on a 'a pragmatic and case-specific evaluation of a variety of considerations' including 'the interests of fairness, judicial economy, convenience, and comity.'" *Desjardins v. Willard*, 777 F.3d 43, 45-46 (1st Cir. 2015), quoting *Camelio*, 137 F.3d at 672.

Here, these interests favor the Court continuing to exercise supplemental jurisdiction over the state law claims. This case has been pending since February 2016, discovery has been completed, and the summary judgment has been fully briefed. Dismissal would simply mandate that Medici refile the action. Given that he moved to Illinois in June 2018, Medici could refile the action in this very court, asserting diversity jurisdiction. If he were to do so within 30 days of dismissal, the claims would relate back to the date of the original complaint for statute of limitations purposes. See 28 U.S.C. § 1367(d). If the matter were refiled in state court, that court would have to gain familiarity with this very complex case involving a research misconduct proceeding mandated by federal regulations. Accordingly, if the Court decides that it does not have federal question jurisdiction, in the interests of fairness, judicial economy, convenience, and comity, it should exercise its discretion and continue exercising supplemental jurisdiction over the state law claims.

WHEREFORE, Medici requests that the Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction be DENIED.

Respectfully submitted,

The Plaintiff,

**DAMIAN MEDICI,**
By his attorney,

*/s/ William T. Harrington*
William T. Harrington (BBO# 564445)
738 Main Street
Hingham, MA 02043
(781) 385-7230
wharringtonlaw@gmail.com

Dated:  November 28, 2018

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants via first class mail, postage prepaid, on this date.

*/s/ William T. Harrington*