UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DR. DAMIAN MEDICI,<br>    Plaintiff,<br><br>v.<br><br>LIFESPAN CORPORATION,<br>RHODE ISLAND HOSPITAL, and<br>MICHAEL SUSIENKA,<br>    Defendants. | C.A. No. 17-265-JJM-PAS |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Defendants Lifespan Corporation, Rhode Island Hospital, and Michael Susienka ("Defendants") move to dismiss Plaintiff Dr. Damian Medici's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss. ECF No. 92.

I. BACKGROUND

Dr. Medici is a research scientist specializing in stem cell research. From 2012 through 2015, Dr. Medici was employed by Rhode Island Hospital ("RIH") and appointed as an Associate Professor at Brown University's medical school. Dr. Medici's research focused on processes by which standard cells transform to stem-cells—some of his research focused on a particular process known as endothelial-mesenchymal transition, or "EndMT." In EndMT, endothelial cells—cells that line the surface of blood cells—transform to mesenchymal cells, or stem cells.

Defendant Michael Susienka was hired by Dr. Medici to work in his lab at RIH. While working for Dr. Medici, Mr. Susienka reviewed articles published by Dr. Medici and noticed several images in those articles that appeared to be duplicates of images in other of Dr. Medici's articles. The duplicate images purported to represent the results of different experiments. Mr. Susienka reported the sets of images that he believed were duplicates to Lifespan, the parent of RIH. Lifespan investigated allegations of image duplication,[1] image manipulation, and falsification of data and concluded that Dr. Medici engaged in research misconduct with respect to three of four allegations.[2] Dr. Medici's employment by RIH was terminated in light of the findings of research misconduct.

---

[1] After consultation with the Office of Research Integrity, Lifespan referred four allegations relating solely to articles published while Dr. Medici was at Harvard to Harvard. Harvard investigated the four instances of duplication identified by Mr. Susienka and discovered an additional four instances of image duplication in Dr. Medici's publications. The Harvard Investigation Committee found, with respect to each of the eight allegations it reviewed, that Dr. Medici "intentionally, knowingly, or recklessly committed research misconduct" and his "approach and attitude with respect to data management and reporting is well beyond the generally accepted practices of the scientific community..." ECF No. 101-1 at 96.

[2] Specifically, the Lifespan Investigation Committee found that the preponderance of the evidence established that Dr. Medici had attempted to manipulate live cell cultures to make it appear that his EndMT attempts were successful, and that images were duplicates with respect to two allegations of image duplication. The Committee found that the images were duplicates and rejected the assertion that the use of duplicate images was not misleading because it "shows exactly the same response," and "the representation of images from one experiment as the authentic results of a completely different experiment is falsification regardless of serendipitous similarities. To suggest otherwise upends scientific integrity." ECF No. 78-3 at 4953.

*Federal Regulations and Lifespan's Research Misconduct Policy*

Lifespan and RIH, institutions that receive funding from federal Public Health Service agencies including the National Institutes of Health and the National Heart, Lung, and Blood Institute, must comply with federal regulations regarding research misconduct. The regulations, which appear at 42 C.F.R. Part 93 (the "Regulations"), require that institutions respond to each allegation of research misconduct for which the institution is responsible and that institutions adopt written policies regarding the process for addressing allegations of research misconduct when the research is supported by Public Health Service funds. 42 C.F.R. § 93.300.

The Lifespan Policy on Research Misconduct (the "Misconduct Policy") was adopted pursuant to the Regulations and provides that it "will normally be followed when a Lifespan official receives an Allegation," but that "particular circumstances in an individual case may dictate variation from the normal procedure where it is determined to be in the best interests of research integrity, or as needed for the operation of Lifespan and/or of any relevant federal agency." The Regulations and Misconduct Policy provide that when an allegation of research misconduct is received, the Research Integrity Officer ("RIO") must determine if the allegation identifies actions that constitute research misconduct and is credible and specific enough so that evidence of misconduct can be identified. If the RIO determines that the allegation meets these requirements, a two-stage process is followed before a determination of research misconduct can be made.

3

The first stage is an "inquiry," conducted by an Inquiry Committee empaneled by the RIO. The purpose of the inquiry is to determine whether the second stage of the process—the investigation—is warranted. The Inquiry Committee makes a preliminary evaluation of the evidence and testimony, normally interviewing the complainant, respondent, and other witnesses as provided in the Misconduct Policy. At the end of the inquiry stage, the Inquiry Committee prepares a written summary of the evidence, its conclusions, and a recommendation on whether to proceed to the investigation stage. The Inquiry Committee report and respondent's comments are provided to the Deciding Official ("DO") to decide whether to adopt the Inquiry Committee recommendation. If an investigation is warranted, the Misconduct Policy and the Regulations require that the institution notify the Office of Research Integrity ("ORI") of the decision to proceed to investigation.

The Investigation Committee is selected by the RIO and takes custody of and reviews the evidence collected by the Inquiry Committee, as well as any additional relevant evidence. The Investigation Committee issues a preliminary report explaining its process, the evidence, and conclusions as to each allegation. A finding of research misconduct requires that the conduct at issue constitute "a significant departure from accepted practices of the relevant research community," that the "misconduct be committed intentionally, knowingly, or recklessly," and that "the allegation be proven by a preponderance of the evidence." The respondent is provided with a copy of the preliminary report and has thirty days to respond. The Investigation Committee considers the respondent's comments, makes any

modifications to its report, and issues a final report of the investigation. Under Lifespan's Misconduct Policy, the respondent is given an opportunity to respond to the final report.

The Investigation Committee's final report and respondent's comments are forwarded to the DO, who decides whether to adopt the Investigation Committee's findings. The DO's determination, the Investigation Committee's report, and the respondent's response are sent to ORI.

ORI may review the institution's findings and process, make its own finding of research misconduct, propose administrative actions, or take no action at all.

*Procedural History*

Dr. Medici initially filed this action in the District of Massachusetts and transferred it to this Court. Dr. Medici's Second Amended Complaint alleges seven causes of action: (i) breach of contract arising out of Lifespan's alleged breach of the Misconduct Policy; (ii) breach of contract arising out of Lifespan's termination of Dr. Medici; (iii) defamation; (iv) tortious interference with advantageous relations; (v) intentional infliction of emotional distress; (vi) violation of the federal Stored Communications Act; and (vii) Declaratory Judgment and Equitable Relief.

In Dr. Medici's Opposition to Defendants' Motion for Summary Judgment, he consented to the dismissal of his claim under the Stored Communications Act, which provided the basis for federal question jurisdiction. ECF No. 79 at 42-43. Dr. Medici asks the Court to assert jurisdiction over his remaining state law claims as they raise

an issue of federal law: the application of the Regulations governing research misconduct. In response, Defendants move to dismiss.

## II. STANDARD OF REVIEW

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of actions in which the court lacks subject matter jurisdiction. When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the Court must "construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996). However, the burden of proving that subject matter jurisdiction exists is placed on the plaintiff, not the defendant. *See Thomson v. Gaskill*, 315 U.S. 442, 446 (1942) ("If a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof."); *see also Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (noting that the party invoking the jurisdiction of a federal court carries the burden of proving its existence).

Federal question jurisdiction exists over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case "arises under" federal law when federal law creates one or more of the causes of action. *See Gunn v. Minton*, 568 U.S. 251, 257 (2013). The Supreme Court has also recognized a "special and small category of cases" in which state law claims raise federal issues giving rise to federal question jurisdiction. *Id.* at 258. To determine whether a case falls within the "special and small category of cases," the

question is if "a state-law claim necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). The *Grable* test does not give rise to federal question jurisdiction where, although the case raises a disputed question of federal law, that federal question is not a "pure issue of law," but is instead "fact-bound and situation-specific." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006).

III. DISCUSSION

The issues raised by Dr. Medici are insufficient to confer federal question jurisdiction. Dr. Medici's Complaint centers on the alleged shortcomings of Lifespan's research misconduct investigation with respect to Lifespan's Research Misconduct Policy and the federal regulations pursuant to which they were adopted. For example, Dr. Medici alleges that he did not receive a summary of his interview before the Inquiry Committee, that the Investigation was not timely completed, and that the Investigation Committee did not have appropriate scientific expertise. ECF No. 58 at ¶¶ 91, 118, 130.

First, while Dr. Medici argues that the interpretation of regulations governing research misconduct investigations confer subject matter jurisdiction over his Complaint, it is not clear that the interpretation of federal regulations is "actually disputed." *See Grable*, 545 U.S. at 314. The parties do not dispute that the federal

7

regulations regarding research misconduct investigations apply to Lifespan. And Dr. Medici fails to highlight any specific regulation that the parties interpret differently.

Further, the alleged dispute is not a pure issue of law, but is fact bound and situation-specific. Where a case raises a disputed question of law, but the question does not turn on a new interpretation of federal law that will govern many cases, courts have declined to extend federal question jurisdiction over the action. *See Empire Healthchoice*, 547 U.S. at 700-01 (holding that claims by health insurance carrier for federal employees seeking reimbursement of benefits was situation-specific and not a pure issue of law that "could be settled once and for all and thereafter would govern numerous...cases."); *see also Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8, 14 (1st Cir. 2013) (breach of contract claim regarding alleged violation of Department of Housing and Urban Development regulations did not give rise to federal question jurisdiction because the claim did not turn on a new interpretation of a federal statute or regulation which will govern a large number of cases); *Doe v. Boston University*, No. 17-cv-10520, 2017 WL 2255752 (D. Mass. May 23, 2017) (holding that plaintiff's claim based on an alleged Title IX violation was not sufficient to confer federal question jurisdiction because it was fact-specific and even if the case "could turn on a new interpretation of Title IX, that interpretation would not govern a large number of cases so as to affect the federal system as a whole."); cf. *One and Ken Valley Housing Group v. Maine State Housing Authority*, 716 F.3d 218, 225 (1st Cir. 2013) (finding federal question jurisdiction where outcome of legal question raised by plaintiffs would dictate the

outcome in many other cases filed by landlords across the country). Here, Dr. Medici's claim that Lifespan's conduct violated its Research Misconduct Policy, created pursuant to federal regulations, is a fact-bound and situation-specific claim involving whether Lifespan's actions constitute a breach of contract. The Court's determination on the issue has no application to the federal regulations as a whole or beyond the facts of Dr. Medici's instant case.

Dr. Medici's heavy reliance on the First Circuit's decision in *Anversa v. Partners Healthcare System, Inc.*, 835 F.3d 167 (1st Cir. 2016), is misplaced. While there are many similarities between the facts and claims asserted in *Anversa* and this case, the issues before the two courts are meaningfully different. The issue before the *Anversa* court addressed whether the plaintiffs needed to await ORI review of Harvard's research misconduct investigation before proceeding on breach of contract and tort claims—the court found that the ORI review was a necessary prerequisite. *Id.* at 180. Accordingly, the court found federal question jurisdiction to address the exhaustion issue because it required the court to consider "the importance of [the research misconduct] regulations to the Congressional scheme." *Id.* at 174 n.5. That question is not before the Court. Here, Dr. Medici's claims relate to how Lifespan conducted its research misconduct investigation and do not relate to the significance of the relevant federal regulations to the Congressional scheme. Rather, the federal regulations serve as a backdrop to typical state law claims.

The Court also declines to exercise supplemental jurisdiction over Mr. Medici's remaining state law claims. Under 28 U.S.C. § 1367(c)(3), the Court "may decline to

exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." While it is true that dismissal of federal claims does not require the dismissal of state law claims, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also United Mine Workers v. Gibbs*, 383 U.S. 343, 726 (1966) (explaining that if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well); *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims."); *Flowers v. Fiore*, 239 F. Supp. 2d 173 (D.R.I. 2003) (declining to extend supplemental jurisdiction after the plaintiff's federal claims were dismissed on a motion for summary judgment).[3]

---

[3] Dr. Medici argues that the Court should exercise supplemental jurisdiction over the state law claims because dismissal would simply mandate that he refile the action asserting diversity jurisdiction given that he moved to Illinois in June 2018. However, the fact that Dr. Medici may refile his case in this court is not a basis for the Court to exercise supplemental jurisdiction. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 581 (2004) (dismissing the case even though the dismissal would likely be followed by refiling).

## IV. CONCLUSION

The issues raised by Dr. Medici fail to confer federal question jurisdiction and the Court declines to extend supplemental jurisdiction over the remaining state law claims. For the foregoing reasons, the Court GRANTS the Defendants' Motion to Dismiss.[4]  ECF No. 92.

IT IS SO ORDERED.

_/s/ John J. McConnell, Jr._
John J. McConnell, Jr.
United States District Judge

June 3, 2019

---

[4] Accordingly, the Court denies as moot Defendants' Motion for Summary Judgment (ECF No. 74) and Dr. Medici's Motions to Strike (ECF Nos. 84, 109). Defendants have also moved for sanctions based on the production of documents related to Harvard's investigation into alleged research misconduct by Dr. Medici. The Court is disturbed by the delayed production of relevant documents and the flimsy justification for the delay, but in light of the Court's dismissal of the matter, denies Defendants' Motion for Sanctions. ECF No. 102.